Harry G. Herman, S.
The trustees, in connection with their intermediate account, request authority to dispose of a portion of the real estate so as to be in a position to make the necessary income payments to the beneficiaries. The question is presented by reason of the language in the will, more particularly paragraph ‘1 thirteenth ’ ’ which reads as follows: ‘ ‘ thirteenth : I order and direct that the executors hereof and trustees hereunder shall retain during the continuance of the trust the fol *145 lowing property owned by me and known as Nos. 5, 7, 9, 11, 13, 27 and 29 Main Street, Nos. 3 and 5 Palisade Avenue, 16 and 18 Warburton Avenue, 25, 27 and 29 North Broadway and 1 and 3 Mill Street, in the City of Yonkers, and they shall have no power of sale in relation thereto. They may, however, mortgage any particular piece of the said real estate for the purpose of replacing mortgages that have been called thereon or to pay for the building to take the place of a building which has been destroyed by fire, and in this last mentioned case, the mortgage shall not exceed the value of the ground to be built upon and I give them power to borrow money accordingly.”
Decedent died March 21, 1925, leaving a will which was admitted to probate by this court on May 5, 1925. The great bulk of his estate consisted of real estate located in Yonkers. Throughout the years, including the depression years, the fiduciaries were able to retain the said properties but only by using income to satisfy some of the principal indebtednesses. As a result there has been an overinvestment of income of more than $150,000 which rightfully belongs to the income beneficiaries, for which there is no cash available. Beal estate is the only asset in the trust at the present time.
In light of the factual situation and the unequivocal direction by the testator not to sell any of the subject property, it has become necessary for the trustees to enlist the assistance of the court.
Some of the income beneficiaries now seek payment of income heretofore earned which has been applied to principal expenses in past years. This was the only method available to retain the real estate and to keep the properties in good condition.
It appears obvious to the court that the inflexible instructions of the testator must be altered for the benefit of all, if authority therefor exists. Mr. Surrogate Foley had a similar problem before him in Matter of Pulitzer (139 Misc. 575) in which, in allowing a sale, he stated at page 579: “ But I prefer to place my determination here upon broader grounds and upon the power of a court of equity, in emergencies, to protect the beneficiaries of a trust from serious loss, or a total destruction of a substantial asset of the corpus. The law, in the case of necessity, reads into the will an implied power of sale ’ ’ and also at page 580: “ The same rule applies to emergencies in trusts not only where there is an absence of a power of sale in a will, but also where there is a prohibition against a sale.” Other courts have taken a similar position with respect to real property. (Matter of O’Donnell, 221 N. Y. 197; Matter of Minden, 138 N. Y. S. 2d 340.) On the general subject of authority of the *146 court to authorize the sale of estate property despite a testamentary prohibition, see, also, Matter of Roche (233 App. Div. 236). No specific proposal is before the court for approval. However, it is generally agreed that for the requirements itemized in the petition the amount of approximately $250,000 in liquid assets should be made available. At this time, the trustees are authorized to proceed with the sale of such trust assets as to them may be deemed necessary to satisfy the described needs. All proposals will be subject to approval by this court.
Because the trust holdings consist entirely of real estate, the special guardian recommends that a reserve for depreciation should be established. By decree dated June 30,1930, Surrogate Slater construed decedent’s will as not requiring a reserve be established. In that connection the special guardian has preliminarily requested the court to determine whether such a holding was res judicata upon his wards who not only were not parties to the proceeding back in 1930, but were not then in being. Should the court hold the prior detennination be not binding, then the special guardian requests a decision as to whether a reserve for depreciation should now be set up.
On the subject of res judicata, reference is made to the opinion of Surrogate Taylor in Matter of Balfe (49 N. Y. S. 2d 882, affd. 269 App. Div. 904, affd. 295 N. Y. 975) who considered the problem at great length. An exhaustive review of the relevant cases theretofore decided was had. This court will adhere to that precedent and arrive at the conclusion that the construction by Surrogate Slater in 1930 is res judicata. The person through whom the infants, who now raise the question, have an interest, was a party to the proceeding back in 1930. (See, also, Matter of Gould, 28 Misc 2d 1067; Matter of Necarsulmer, 29 Misc 2d 314.)
In light of this holding the question as to the necessity for the creation of a reserve for depreciation becomes academic.